UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE MONTOYA, ROBERT MONTOYA, and BENJAMIN MONTOYA, | No.  2:15–cv–02573-TLN-DB |
| Plaintiffs, | **ORDER** |
| v. | |
| COMCAST CORPORATION, and DOES 1 through 100, inclusive, | |
| Defendant. | |

    This matter is before the Court pursuant to Defendant Comcast Corporation's ("Defendant")

Motion to Dismiss or, in the Alternative, to Compel Arbitration.  (ECF No. 8.)  Plaintiffs Laurie,

Robert, and Benjamin Montoya ("Plaintiffs") have filed an Opposition to Defendant's motion

(ECF No. 13) to which Defendant has filed a Reply (ECF No. 15).   The Court has carefully

considered the arguments raised in Defendant's Motion and Reply as well as Plaintiffs'

Opposition.  For the reasons set forth below, the Court GRANTS Defendant's Motion to Compel

Arbitration, DENIES the Motion to Dismiss as MOOT, and STAYS this action pending

arbitration.

///

///

1

## I.       FACTUAL BACKGROUND

At all relevant times, Plaintiffs resided in a home for which Defendant provided cable television, internet, and VOIP services.  (First Amended Complaint, ECF No. 6 at ¶ 9.)  Plaintiffs allege that they were not given, or were not in possession of, any written contract for the services.  (ECF No. 6 at ¶ 9.)  Defendant argues that an "Agreement for Residential Services" ("Customer Agreement" or "the contract"), which includes an arbitration provision, is routinely given to Comcast subscribers for such services.  (ECF No. 8 at 3.)

Defendant states that there is a customer on record for services at Plaintiffs' residence, but that he or she is not party to this lawsuit.  (ECF No. 8 at 2.)  Defendant does not name this individual for security reasons, but refers to him or her as the "Original Subscriber."  (ECF No. 8 at 2.)  The relationship between the Original Subscriber and the Plaintiffs is unclear to the Court.  Plaintiffs do not explain how or why they were using this unknown person's services.  The parties dispute whether a written contract was provided to the Original Subscriber.  Plaintiffs maintain that, "Defendants did not provide a written Customer Agreement … to any individual or entity in relation to Defendant providing the services at Plaintiffs' residence…" (ECF No. 6 at ¶ 9.) Defendant, on the other hand, argues that the Original Subscriber of the residence "signed a work order acknowledging receipt of the [Customer Agreement] and agreed to be bound by [it]."  (ECF No. 8 at 3.)  Defendant has not provided that signed agreement.

Neither party has addressed how, why, or even if Defendant was in possession of Plaintiffs' identifying information in the absence of a written service contract.  Plaintiffs do not clearly indicate what type of relationship they had with Defendant, they only state that they had a "legal relationship" with the Defendant based on the services that Defendant provided.  (ECF No. 6 at ¶ 10.)  Plaintiffs maintain that, due to this "legal relationship," Defendant was in possession of Plaintiffs' personal identifying information.  (ECF No. 6 at ¶ 10.)  Plaintiffs allege that Defendant "repeatedly allowed third parties to obtain" this private information including, but not limited to, phone numbers, addresses, social security numbers, and credit card information.  (ECF No. 6 at ¶ 15–16.)  The third party, or parties, allegedly used this information to repeatedly harass and hack Plaintiffs.  (ECF No. 6 at ¶ 12–14.)

Plaintiffs further allege that Defendant had knowledge of the security breaches and failed to adequately protect Plaintiffs' personal identifying information.  (ECF No. 6 at ¶ 14–16.) Plaintiffs maintain that Defendant made "promises and guarantees" to "follow its own security measures," as well as provide additional security measures, but failed to do so.  (ECF No. 6 at ¶ 14.)  However, Plaintiffs do not provide any information as to specific conversations or communications between Plaintiffs and Defendant regarding these promises.

Plaintiffs allege that, although there is no contract between them and Defendant, they are still "subscribers" and "customers" of Defendant.  (ECF No. 6 at ¶ 10–11.)  In response, Defendant argues that Plaintiffs are not "subscribers" or "customers" because they did not sign a Customer Agreement.  In the alternative, Defendant argues that, should the Court find Plaintiffs are "subscribers" or "customers," the Court should compel them to arbitrate their disputes based on the arbitration provision within Defendant's standard Customer Agreement.  (ECF No. 8.) Plaintiffs deny the very existence of an enforceable arbitration provision and, even if one did exist, claim that the provision provided by Defendant is unconscionable and does not encompass the disputes at issue in this case.  (ECF No. 13 at 7–14.)  The arbitration provision within the Customer Agreement states the following:

> If you have a Dispute … with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court.

(ECF No. 8-2 at 19.)

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed a complaint in the Superior Court of Sacramento asserting a variety of federal, state, and common law claims against Defendant arising out of the allegation that Defendant allowed third parties access to Plaintiffs' personal identifying information and did not maintain adequate safeguards.  (ECF No. 6.)  Specifically the claims are: Violation of California Penal Code § 637.5; Violation of 47 U.S.C. 551; Violation of the California Customer Records Act; Violation of the California Unfair Business Practices Act; Invasion of Privacy; Negligence

1  (Including Negligence per se and Tort of Another Damages); Negligent Infliction of Emotional

2  Distress; and Violations of the California Consumers Legal Remedies Act.  (ECF No. 6.)

3       Defendant removed the case from the Superior Court of Sacramento to this Court on

4  December 11, 2015 (ECF No. 1) and filed a Motion to Dismiss on December 18, 2015 (ECF No.

5  4).  In response, Plaintiffs filed the First Amended Complaint ("FAC") on January, 8, 2016 (ECF

6  No. 6).  Defendant then filed the instant motion.  (ECF No. 8.)  Defendant moves this Court to

7  dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant

8  contends that Plaintiffs' FAC fails to state a claim upon which relief can be granted because all of

9  Plaintiffs' claims make a series of legal conclusions lacking factual basis.  (ECF No. 8 at 10–14.)

10  Alternatively, Defendant argues that using Defendant's services binds Plaintiffs to the Customer

11  Agreement and the arbitration provision within that agreement.  (ECF No. 8 at 10–14.)

12  Defendant requests the Court issue an order compelling Plaintiffs to submit their claims to

13  arbitration because the claims are subject to arbitration under the arbitration provision of the

14  Customer Agreement.  (ECF No. 8 at 10–14.)  For the reasons discussed below, the Court finds

15  the issue of arbitration to be a threshold issue and therefore will not consider the motion to

16  dismiss.

17      **III.     STANDARD OF LAW**

18      "[T]he federal law of arbitrability under the Federal Arbitration Act ("FAA") governs the

19  allocation of authority between courts and arbitrators."  *Cox v. Ocean View Hotel Corp.*, 533 F.3d

20  1114, 1119 (9th Cir. 2008).  There is an "emphatic federal policy in favor of arbitral dispute

21  resolution."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985).  As

22  such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of

23  arbitration, whether the problem at hand is the construction of the contract language itself or an

24  allegation of waiver, delay, or a like defense to arbitrability."  *Id*. at 626 (quoting *Moses H. Cone*

25  *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).  "Because waiver of the right

26  to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of

27  proof.'"  *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (quoting *Belke v.*

28  *Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982)).

4

Generally, in deciding whether a dispute is subject to an arbitration agreement, the Court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As such, the Court's role "is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991).

"In determining the existence of an agreement to arbitrate, the district court looks to 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration.'" *Botorff v. Amerco*, No. 2:12–CV–01286, 2012 WL 6628952, at *3 (E.D. Cal. Dec. 19, 2012) (citing *Wagner v. Stratton*, 83 F.3d 1046, 1049 (9th Cir. 1996)). An arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quoting *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Therefore, courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 1748 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

If the Court "determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration." *Delgadillo v. James McKaone Enters., Inc.*, No. 1:12–CV–1149, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012). The plain language of the FAA provides that the Court should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C. § 3. However, "9 U.S.C. § 3 gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause. Thus, the provision does not limit the court's authority to grant dismissal in the case." *Sparling v. Hoffman Constr. Co.*,

1   864 F.2d 635, 638 (9th Cir. 1988).

2   **IV.   ANALYSIS**

3       The primary dispute between the parties is whether Plaintiffs are "subscribers" and

4   "customers" of Defendant's services.  (ECF No. 6 at ¶ 10; ECF No. 8 at 5.)  However, the Court

5   finds that the threshold issue is whether, as a matter of law, a non-signatory to a contract can be

6   compelled to arbitrate a dispute with a signatory.  In the present case, the Court finds that,

7   regardless of "subscriber" status, a special relationship existed between Plaintiffs and Defendant

8   regarding Plaintiffs' use of Defendant's services.  Therefore, the Court first turns to whether there

9   is an enforceable arbitration agreement that would apply to Plaintiffs' dispute because of this

10  relationship.

11                  A.   Enforceability of the Arbitration Agreement Against Non-Signatories

12      Plaintiffs and Defendant disagree as to the enforceability of the arbitration agreement.

13  Plaintiffs argue that no such agreement existed and that they are not bound to anything without

14  having seen or signed it.  (ECF No. 13 at 7.)  Defendant argues that Plaintiffs cannot accept the

15  benefits of its user services without the obligations that go along with those services.  (ECF No. 8

16  at 11.)

17      Plaintiffs do not contest that they were in regular use of Defendant's services.  Plaintiffs

18  even go so far as to state that, "at all relevant times Defendant and Plaintiffs had a *legal*

19  *relationship* where Defendant provided…services."  (ECF No. 6 at ¶ 10 (emphasis added).)  At

20  no point in the pleadings do Plaintiffs make any claim that they did not benefit from Defendant's

21  services or that they did not intend to use the services.  They only argue that they did not sign the

22  agreement and are therefore not bound by it.  (ECF No. 13 at 8.)  Defendant argues that even

23  though Plaintiffs are a non-signatory party, it would be inequitable to allow Plaintiffs to receive

24  the benefits that a signatory user receives without being bound by the obligations of a signatory

25  user.  (ECF No. 8 at 11.)

26      The Ninth Circuit has made clear that there are a variety of ways that a non-signatory may

27  be bound by an arbitration agreement.  Specifically, "non-signatories of arbitration agreements

28  may be bound by the agreement under ordinary contract and agency principles."  *Comer v. Micor,*

1    *Inc.*, 436 F.3d 1098 (9th Cir. 2006) (citing *Letizia v. Prudential Bache Securities, Inc*., 802 F.2d

2    1185, 1187–89 (9th Cir.1986)).  The Ninth Circuit instructed, "among these principles[:] are 1)

3    incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel."

4    *Id.* at 1101 (internal citation omitted)).

5          The most applicable principle in the case at hand is estoppel.  The Ninth Circuit has

6    repeatedly expressed that equitable estoppel "precludes a party from claiming the benefits of a

7    contract while simultaneously attempting to avoid the burdens that contract imposes."  *Id.*, *see*

8    *also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009).  Specifically, the

9    Ninth Circuit has observed that "non-signatories have been held to arbitration clauses where the

10   non-signatory *knowingly exploits the agreement* containing the arbitration clause despite having

11   never signed the agreement."  *Comer*, 436 F.3d at 1101 (9th Cir. 2006) (internal citations omitted)

12   (emphasis added).  "Federal courts have recognized that the obligation to arbitrate… does not

13   attach only to one who has personally signed the arbitration provision."  *Nguyen v. Barnes &*

14   *Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (internal citations omitted).  "Instead, a non-

15   signatory to an arbitration agreement may be compelled to arbitrate where the non-signatory

16   *knowingly exploits the benefits* of the agreement and *receives benefits flowing directly from the*

17   *agreement*."  *Id.*  (internal citations omitted) (emphasis added).[1]

18         Non-signatories are also compelled to arbitrate when "the claims [of the non-signatory]

19   are *intertwined with* the underlying contractual obligations."  *Mundi*, 555 F.3d at 1046.

20   California courts have observed that "in the arbitration context, a party who has not signed a

21   contract containing an arbitration clause may nonetheless be compelled to arbitrate when he seeks

22   enforcement of other provisions of the same contract that benefit him."  *Metalclad Corp. v.*

23   *Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003).  *See also Boucher v.*

24   *All. Title Co., Inc.*, 127 Cal. App. 4th 262, 272 (2005) ("the fundamental point is that a party may

25   ───────────────

26   [1]      Other circuit courts have held similarly. The Eleventh Circuit has stated that "a non-signatory is estopped
     from refusing to comply with an arbitration clause 'when it receives a direct benefit from a contract containing an
     arbitration clause.'" *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000)

27   (citing *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir.1999)); *See also Deloitte
     Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1064 (2d Cir.1993) (holding non-signatory bound to arbitrate

28   when it knew of the arbitration agreement and "knowingly accepted the benefits of" that agreement.)

1   not make use of a contract containing an arbitration clause and then attempt to avoid the duty to

2   arbitrate").

3                            *i.   Acceptance and Exploitation of Benefits*

4          Plaintiffs' and Defendant's actions show an intent to engage in a transaction for services.[2]

5   (ECF No. 6 at ¶ 10.)  Plaintiffs' admitted use of Defendant's services demonstrates Plaintiffs

6   knowingly exploited the agreement for Defendant's services.  (ECF No. 6 at ¶ 10.)   Additionally,

7   Plaintiffs did more than just passively benefit from the services.  They actively utilized the

8   infrastructure of Defendant's company by asking for additional security measures when they felt

9   their personal information had been compromised.  (ECF No. 6 at ¶ 10.)

10          Acceptance of a contract's benefits may serve as consent to the contract's obligations,

11   even when the contract has not been signed, if the non-signatory party acts in a way that indicates

12   knowing acceptance of such benefits.  *Entertainment Leasing Corp. v. Shugart Corp.*, 231 Cal.

13   App. 3d 737, 745 (Ct. App. 1991) ("[W]hether there has been an assumption of the obligations is

14   to be determined by the intent of the parties as indicated by their acts, the subject matter of the

15   contract or their words.").  *See also Recorded Picture Co. v. Nelson Entertainment, Inc*., 53 Cal.

16   App. 4th 350 (App. 2 Dist. 1997) (assumption of contractual obligations may be implied from

17   acceptance of benefits under contract.)  By knowingly exploiting the agreement and accepting the

18   benefits of the contract, Plaintiffs cannot avoid the obligations of that contract.  *Comer*, 436 F.3d

19   at 1101.  Whether or not the Plaintiffs actually read the services contract or arbitration agreement

20   is irrelevant.  *Hill v. Gateway 2000, Inc.,* 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need

21   not be read to be effective; people who accept [the contract] take the risk that the unread terms

22   may in retrospect prove unwelcome.").

23          The Court finds Defendant has shown that Plaintiffs knowingly exploited Defendant's

24   service and therefore accepted its terms by accepting the benefits of service.  Accordingly, the

25   Plaintiffs are bound by the obligations of this contract, including the arbitration provision.

26   *Tamsco Properties, LLC v. Langemeier*, No. 2:09-CV-03086-GEB, 2013 WL 246782, at *7 (E.D.

27   

28   [2]        By continuously referring to themselves as "subscribers" and "customers" the Court concludes that
Plaintiffs were in fact actively utilizing Defendant's services.

1  Cal. Jan. 22, 2013), aff'd, 597 F. App'x 428 (9th Cir. 2015) ("To allow Plaintiffs to claim the

2  benefit of the [Agreement] and simultaneously avoid its burdens would …disregard equity.")

3  (internal citations omitted).

4           *ii.  Claims are Intertwined with the Contract*

5        Non-signatories are compelled to arbitrate when their claims "are intertwined with" the

6  underlying contractual obligations.  *Mundi*, 555 F.3d at 1046.  Claims may be "intertwined" with

7  a contract when they rely on, or presume the existence of, the underlying contract benefits or

8  obligations.  *Id*.  Here, the language of the Customer Agreement establishes that Plaintiffs' claims

9  are intertwined with the requirements of the contract:

10      "XFINITY *Service(s) will be provided to you* ("you," "your," or "Customer") *on the terms*

11      *and conditions set forth in this Agreement* for Residential Services (the "Agreement") and
    applicable law by the operating company subsidiary of Comcast Corporation…

12      Note: This Agreement contains a binding arbitration provision in Section 13 that affects

13      your rights under this Agreement with respect to all Service(s)."

14  (emphasis added) (ECF No. 8-2 at 6.)  Thus, Comcast Xfinity users, under the Customer Service

15  Agreement, agree to the "obligation" of forgoing their rights to litigate by agreeing to arbitrate

16  disputes in exchange for the "benefit" of the cable and internet services which Defendant agreed

17  to provide.[3]

18        In the FAC, Plaintiffs do not contend that their claims are separate from, or in any way

19  unrelated to, the services they received from Defendant and explicitly state that all claims arise

20  from use of Defendant's cable/internet service and Defendant's "reckless disclosure… of

21  information."  (ECF No. 6 at ¶ 1.)  By bringing forth these claims, and predicating them on the

22  direct receipt of services from Defendant, Plaintiffs presume the existence of the underlying

23  contract.  Clearly, Plaintiffs' action is intertwined with the contract because they are seeking to

24  enforce the benefits of the contract (cable/internet services and protection of personal

25  _____

26  [3]    The Customer Agreement further states "IF YOU DO NOT WISH T0 BE BOUND BY THIS
ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN 30 DAYS OF THE

27  DATE THAT YOU FIRST RECEIVE THIS AGREEMENT…" (ECF No. 8-2 at 20.)  Plaintiffs bring forth the
argument that they are not bound by the arbitration provision because they "opted-out" on January 17, 2016, which

28  was 30 days after they first reviewed the contract on December 18, 2016.  (ECF No. 13 at 11.)  This is not relevant
because the incidents that form the basis of Plaintiffs' claims occurred before this opt-out took place.

1   information) while simultaneously seeking to avoid the obligations of the contract (arbitration of

2   disputes.)  "[I]n the arbitration context, a party who has not signed a contract containing an

3   arbitration clause may nonetheless be compelled to arbitrate when he seeks enforcement of other

4   provisions of the same contract that benefit him."  *Metalclad Corp.*, 109 Cal. App. 4th at 1713.

5   Plaintiffs have voluntarily accepted and knowingly exploited Defendant's services and must

6   consent to the terms and conditions of the contract, including the arbitration provision.

7                   B.   Unconscionability of the Arbitration Provision

8          Plaintiffs argue that the arbitration agreement is unenforceable on the basis of

9   unconscionability.  (ECF No. 13 at 11–14.)  In response, Defendant argues that unconscionability

10   is a question for the arbitrator, however, in the alternative they argue that the provision presents

11   no unfair surprise or one-sidedness.  (ECF No. 15 at 6–8.)

12          California courts apply a "sliding scale" analysis in making determinations of

13   unconscionability: "the more substantively oppressive the contract term, the less evidence of

14   procedural unconscionability is required to come to the conclusion that the term is unenforceable

15   and vice versa."  *Kilgore v. Keybank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting

16   *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 114 (2000)).  "No matter

17   how heavily one side of the scale tips, however, both procedural and substantive

18   unconscionability are required for a court to hold an arbitration agreement unenforceable."  *Id.*

19   The Court must apply this balancing test to determine if the arbitration agreement is

20   unenforceable.  As the party opposing arbitration, Plaintiffs bear the burden of proving

21   unconscionability by the preponderance of the evidence.  *Engalla v. Permanente Med. Grp., Inc.*,

22   15 Cal. 4th 951, 972 (1997).  Here, the Court finds Plaintiffs have not met this burden to

23   demonstrate that the Customer Agreement is unconscionable.

24                        *i.   Procedural Unconscionability*

25          Plaintiffs argue that the arbitration provision is procedurally unconscionable because

26   Defendant's alleged failure to provide adequate notice of an arbitration provision made the

27   provision an unfair surprise.  (ECF No. 13 at 11–12.)

28          In evaluating procedural unconscionability under California law, courts "focu[s] on the

10

1    factors of surprise and oppression in the contracting process, including whether the contract was

2    one drafted by the stronger party and whether the weaker party had an opportunity to negotiate."

3    *Pokorny v. Quixtar*, 601 F.3d 987, 996 (9th Cir. 2010).  Surprise "involves the extent to which the

4    contract clearly discloses its terms as well as the reasonable expectations of the weaker party,"

5    *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 922 (9th Cir. 2013).  Oppression arises "from an

6    inequality of bargaining power that results in no real negotiation and an absence of meaningful

7    choice."  *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003) (internal

8    citations omitted).

9         The parties agree that a "Comcast Welcome Kit" is routinely provided to customers when

10   they initiate service and includes the Customer Service Agreement.  (ECF No. 13 at 12; ECF No.

11   8 at 3.)  Plaintiffs make two arguments: first, that no notice is given to users that there is an

12   arbitration clause within the Welcome Kit; and second, that the language of the provision does

13   not indicate that arbitration is mandatory.  (ECF No. 13 at 12.)  Defendant argues that the full

14   Customer Agreement, including the arbitration provision, was provided online at Comcast's

15   website and in the Welcome Kit, creating no unfair surprise or oppression to Plaintiffs.  (ECF No.

16   8 at 3.)

17        Whether or not the Plaintiffs actually read through the services contract within the

18   Welcome Kit is irrelevant.  *Hill*, 105 F.3d at 1148 (finding that a contract need not be read to be

19   effective).  The Court finds Plaintiffs' argument that there was no notice of the arbitration

20   provision in the Welcome Kit unpersuasive.

21        As to Plaintiffs' second argument that the arbitration provision does not clearly indicate

22   that it is mandatory, the Court looks to the language of the Agreement.  The first page of the

23   Customer Service Agreement states, "Note: This Agreement contains a binding arbitration

24   provision in Section 13 that affects your rights under this Agreement with respect to all

25   Service(s)."  (ECF No. 8-2 at 6.)  Section 13 of the Agreement later states, "If you have a Dispute

26   … with Comcast that cannot be resolved through an informal dispute resolution with Comcast,

27   you or Comcast *may* elect to arbitrate that Dispute in accordance with the terms of this

28   Arbitration Provision rather than litigate the Dispute in court."  (ECF No. 8-2 at 19.)

1    Plaintiffs argue that the word "may" is ambiguous as to whether or not arbitration is

2  mandatory, thus creating an unfair surprise.  (ECF No. 13 at 12.)  Defendant responds that the

3  word "may" means that the parties are not *required* to dispute a claim at all, but that "*if* the parties

4  want to pursue a claim, they must do so by arbitration."  (ECF No. 15 at 7–8.)  Defendant further

5  argues that the opt-out policy and claim exclusions would be unnecessary if arbitration was not

6  mandatory.  (ECF No. 15 at 7–8.)  The Court finds that the arbitration agreement could

7  reasonably be read to require arbitration and is therefore not an unfair surprise.  *Pearson Dental*

8  *Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665, 682 (2010) (finding that the court must

9  reasonably interpret the arbitration agreements "in a manner that renders [them] enforceable

10  rather than void").

11    The lack of a "surprise" element prevents the Court from finding procedural

12  unconscionability.  As expressed above, surprise "involves the extent to which the contract

13  clearly discloses its terms as well as the reasonable expectations of the weaker party."  *Chavarria*

14  *v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).  Here, the arbitration provision was

15  presented both in the Welcome Kit and on the Comcast website.  The provision laid out the

16  arbitration obligation in plain language on the first page, and under Section 13.  Accordingly, the

17  Court finds that the arbitration provision is not procedurally unconscionable.

18                                    *ii.  Substantive Unconscionability*

19    Plaintiffs argue that the arbitration agreement is substantively unconscionable because it

20  contains certain facially neutral provisions that allegedly favor Defendant.  (ECF No. 13 at 12–

21  14.)  In order to prove that these provisions constitute substantive unconscionability under

22  California law, Plaintiffs must show that they lead to "'overly harsh' or 'one-sided' results."

23  *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010)

24  (internal citations omitted).  The three provisions — that Plaintiffs allege are one-sided — are the

25  right to appeal,[4] the "fee-splitting scheme,"[5] and the class action waiver.  (ECF No. 13 at 13.)

---

26  [4]    Provision 13(e), the right to appeal, states "an award rendered by the arbitrator may be entered in any court
27  … for purpose of enforcement," and that "if an award granted by the arbitrator exceeds $75,000, either party can
   appeal that award to a three arbitrator panel administered by the same arbitration organization by a written notice."
   (ECF No. 13 at 13.)
28  [5]    Provision 13(h) the fee-splitting provision, states  that "if a party elects to appeal an award to a three-

12

1         Plaintiffs allege that the right to appeal is one-sided because, although it allows either

2   party to appeal an arbitration award exceeding $75,000, Defendant is the only party that is likely

3   to be required to award such a large amount, and thus the only one likely to appeal.  (ECF No. 13

4   at 13.)  Therefore, Plaintiffs contend that the right to appeal is unilateral because it favors

5   Defendant.  (ECF No. 13 at 13.)  In response, Defendant states that the appeals provision is

6   facially neutral and treats Defendant and Plaintiffs equally. (ECF No. 15 at 8.)  Defendant argues

7   that even if the provisions ultimately favor the drafting party, that alone does not make them

8   unconscionable.  (ECF No. 15 at 8.)

9         Regarding the "fee-splitting" provision, Plaintiffs allege that, while the provision allows

10  either party to recover attorney's fees in the event that they win an appeal of the arbitration

11  award, it ultimately favors Defendant.  (ECF No. 13 at 13.)  Plaintiffs argue that this provision,

12  taken with the appeal provision, imposes unfairness and deters subscribers from filing a claim

13  exceeding $75,000 against Defendant because the risk of loss of an appeal would result in further

14  expense.  (ECF No. 13 at 13.)  Defendant maintains that the provision allows either party to

15  appeal and that Plaintiffs have not shown that it necessarily favors Defendant.  (ECF No. 15 at 8.)

16  Defendant counters that even though the prevailing appellant must pay costs and fees, Plaintiffs

17  have not shown that such provision necessarily favors Defendant.  (ECF No. 15 at 8.)

18        Lastly, Plaintiffs argue that the class action provision is substantially unconscionable

19  because Defendant requires subscribers to forfeit the right to class action arbitration.  (ECF No.

20  13 at 14.)  Plaintiffs provide no analysis for this argument and simply conclude that this provision

21  is one-sided in nature. (ECF No. 13 at 14.)   Defendant argues that it is established in California

22  law that class action waivers are enforceable so the provision should not be found

23  unconscionable.  (ECF No. 15 at 9.)

24        The Court agrees with the Defendant that the arbitration agreement is not substantively

25  unconscionable.  Because the provisions allow *either* party to appeal and allow *either* party to

26  incur attorney's fees, the Court finds that the arbitration terms are neither overly harsh nor one-

27

28  arbitrator panel, the prevailing party in the appeal shall be entitled to recover all reasonable attorney's fees and costs
    incurred in that appeal."  (ECF No. 13 at 13.)

1    sided.  *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 917 (2015) (contract not

2    unconscionable where right to appeal limited to awards greater than $100,000 even though

3    provision "will favor the [drafting party].")  *See also Smith v. VMware, Inc.*, No. 15-CV-03750-

4    TEH, 2016 WL 54120, at *4 (N.D. Cal. Jan. 5, 2016) ("A contract term is not substantively

5    unconscionable when it merely gives one side a greater benefit; rather the term must be so one-

6    sided as to shock the conscience.") (internal citations omitted).  Finally, with respect to the class-

7    action waiver provision, Defendant is correct that class action waivers are enforceable under

8    California law.  *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465 (2015), *AT&T Mobility LLC*

9    *v. Concepcion*, 563 U.S. 333, 35 *and Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348,

10   364 (2014) cert. denied, 135 S. Ct. 1155 (2015) (acknowledging that Concepcion pre-empts state

11   law).

12          In order to render an arbitration agreement unenforceable, California law requires a

13   finding of both procedural and substantive unconscionability.  *Kilgore v. KeyBank, Nat. Ass'n*,

14   673 F.3d 947, 963 (9th Cir. 2012).  The arbitration agreement at issue fails to meet this standard.

15   Accordingly, the Court holds that the arbitration agreement is enforceable.

16                        C.  Disputes within Scope of Arbitration Provision

17          Given the Court's finding that there is an enforceable arbitration agreement, the question

18   then becomes "whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho*

19   *Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).

20          Plaintiffs bring forth eight claims related to their use of Defendant's services.  (ECF No.

21   6.)   These causes of action include alleged violations of: 1) California Penal Code § 637.5; 2) 47

22   U.S.C. 551; 3) the California Customer Records Act; 4) the California Unfair Business Practices

23   Act; 5) Invasion of Privacy; 6) Negligence (Including Negligence per se and Tort of Another

24   Damages); 7) Negligent Infliction of Emotional Distress; and 8) the California Consumers Legal

25   Remedies Act. (ECF No. 6 at ¶ 18–47.)  The contract itself states the following:

26          "The term 'Dispute' means *any dispute, claim, or controversy* between you and
             Comcast *regarding any aspect of your relationship* with Comcast, *whether based*
27           *in contract, statute, regulation, ordinance, tort (including, but not limited to,*
             *fraud, misrepresentation, fraudulent inducement, negligence, or any other*
28

                                                      14

1
2
3
4

> *intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope* of this Arbitration Provision. 'Dispute' is to be given the broadest possible meaning that will be enforced. As used in this Arbitration Provision, 'Comcast' means Comcast and its parents, subsidiaries and affiliated companies and each of their respective officers, directors, employees and agents.

5
6
7
8
9
10

(ECF No. 8 at 13 (emphasis added).) Plaintiffs argue that the claims in this case are outside the scope of the arbitration agreement because the "Exclusions to Arbitration" section of the provision explicitly excludes "any dispute related to or arising from allegations associated with *unauthorized use or receipt of service*."[6] (emphasis added) (ECF No. 13 at 14.)  Plaintiffs contend that the disputes mentioned above arise from Defendant's failure to prevent unauthorized use of its service, thus allowing third parties to "hack" Plaintiffs' information.  (ECF No. 13 at 14.)

11
12
13
14
15
16
17

In response, Defendant argues that Plaintiffs' claims are not excluded because they do not arise out of "unauthorized use" and that they instead arise out of Defendant's alleged disclosure of Plaintiffs' personal information to third parties.  (ECF No. 15 at 8.)  Defendant further clarifies that the "unauthorized use of services" provision actually refers to "theft of service" and that hacking and access of personal information does not fall into this category.  (ECF No. 15 at 8.) Defendant maintains that the language of the arbitration provision is sufficiently broad to cover all of the disputes in this case.  (ECF No. 8 at 13.)

18
19
20
21
22
23
24

"Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Coast Plaza Doctors Hosp. v. Blue Cross*, 83 Cal.App.4th 677, 686-687 (2000) ("California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration").  The Court finds that the agreement encompasses the disputes within this case so as to render them within the scope of the arbitration provision.

25
26

The agreement requires the parties to arbitrate "any dispute, claim, or controversy between you and [Defendant] regarding any aspect of your relationship with [Defendant]" and

27
28

---

[6]      Provision 13(j), the Exclusions from Arbitration provision, states in relevant part "You and Comcast agree that the following will not be subject to arbitration… (3) Any dispute related to or arising from allegations associated with unauthorized use or receipt of service."  (ECF No. 8-2 at 21.)

15

1    specifically those disputes based on "statute." (ECF No. 8 at 13.)[7]  Plaintiffs' first, second, third,

2    fourth, and eighth disputes directly arise out of Plaintiffs' relationship with Defendant regarding

3    Plaintiffs' use of Defendant's services and are based on statutory violations.  Accordingly the

4    Court finds Plaintiffs are bound to arbitrate these disputes.

5        With respect to Plaintiffs' remaining tort claims,[8] the definition of "dispute" in the

6    agreement includes all disputes between the user and Defendant, and specifically those based on

7    "tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence,

8    or any other intentional tort)." (ECF No. 8 at 13.)  Plaintiffs' fifth, sixth, and seventh disputes all

9    arise out of alleged tort violations by Defendant regarding Plaintiffs and Defendant's relationship.

10   Accordingly, Plaintiffs are bound to arbitrate these disputes.

11       Accordingly, the Court finds that each of Plaintiffs' claims are subject to arbitration under

12   the Customer Agreement.  The plain language of the FAA provides that the Court should "stay

13   the trial of the action until such arbitration has been had in accordance with the terms of the

14   agreement . . ." 9 U.S.C. § 3.  Therefore, the Court finds it appropriate to stay this action pending

15   arbitration and dismiss the pending motion to dismiss as moot.

16       **V.    CONCLUSION**

17       For the foregoing reasons, the Court GRANTS Defendant's Motion to Compel

18   Arbitration, DENIES Defendant's Motion to Dismiss as MOOT, and STAYS the instant action

19   pending arbitration.

20

21   Dated: September 22, 2016

22

23

24                                          Troy L. Nunley
                                            United States District Judge
25

26   _____

27   [7]       Violations of California Penal Code § 637.5, 47 U.S.C. § 55; the California Customer Records Act; the
     California Unfair Business Practices Act; and the California Consumers Legal Remedies Act.
28   [8]       Invasion of Privacy; Negligence (Including Negligence per se and Tort of Another Damages); and Negligent
     Infliction of Emotional Distress.

                                            16